Magistrate Judge Karen L. Strombom

FILED _____ LODGED
_____ RECEIVED
AUG 0 1 2008
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| UNITED STATES OF AMERICA, | ) | MAGISTRATE'S DOCKET |
| --- | --- | --- |
| Plaintiff, | ) | CASE NO. MJ08-5158 |
| v. | ) | COMPLAINT for VIOLATION |
| LAWRENCE WILLIAMS, | ) | Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 963. |
| Defendant. | ) | |

BEFORE The Honorable Karen L. Strombom, United States Magistrate Judge, Tacoma, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1
### (Conspiracy to Distribute Cocaine)

Beginning at a time unknown, but within the last five years and continuing until on or about July 31, 2008, in Puyallup, within the Western District of Washington, and elsewhere, LAWRENCE WILLIAMS, and other persons, known and unknown, knowingly and intentionally did conspire to distribute cocaine base in the form of crack cocaine, a substance controlled under Schedule II, Title 21, United States Code, Section 812.

It is further alleged that the offense involved five grams or more of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine.

1  All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 963.

The undersigned complainant, being first duly sworn on oath, deposes and says:

## INTRODUCTION

1. I, Jeremy Blauser, am a Special Agent with the Federal Bureau of Investigation (FBI). I have served as an FBI agent for almost eight years. I graduated from the FBI Academy in 2001. While at the Academy, I received intensive training on narcotics trafficking investigations. During my FBI career, I have assisted in the investigations of at least ten cases involving violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et. seq. and related violations. Based on my training and experience, I have become familiar with the common practices of drug dealers and couriers. I am currently assigned to the Tacoma Resident Agency, where my primary responsibilities include the investigation of public corruption and white collar crimes.

2. The information set forth in this criminal complaint consists of information I gathered and observed firsthand through the course of this investigation, as well as information relayed to me by other law enforcement personnel, information gathered from police reports, and information gathered through interviews of witnesses and suspects. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation, nor is it intended to detail everything I know about the investigation. Rather, this affidavit serves to establish that probable cause exists to believe that LAWRENCE WILLIAMS committed the crime of conspiracy to distribute cocaine.

## FACTS IN SUPPORT OF PROBABLE CAUSE

3. On July 24, 2008, Washington State Patrol (WSP) Detective Vik Mauro and I met with a confidential informant (CI), who provided information regarding LAWRENCE WILLIAMS. The CI stated that LAWRENCE WILLIAMS is a resident at

1 the Special Commitment Center (SCC) located on McNeil Island, Washington.[1] The CI
2 has been involved in a romantic relationship with LAWRENCE WILLIAMS since
3 October 2006. The CI informed me that LAWRENCE WILLIAMS had asked him/her on
4 several occasions to pick up and deliver drugs to "Junior," an employee of the SCC, so
5 that "Junior" in turn could deliver the drugs to LAWRENCE WILLIAMS. The CI
6 explained that he/she abided by LAWRENCE WILLIAMS' requests because he/she
7 loved and feared him. The CI has also been involved in the illegal distribution of
8 prescription drugs and is motivated to cooperate with law enforcement in the hopes that
9 he/she receives consideration from the government at sentencing should charges be filed
10 against him/her.
11       4.    I had come into contact with the CI through another confidential source,
12 who had been conducting recorded telephone calls with the CI, unbeknownst to the CI.
13 During those recorded telephone calls, the CI told the other confidential source that
14 he/she was delivering drugs for a friend of his/hers named "Lawrence." The information
15 the CI provided to me on July 24, 2008, was consistent with what he/she had told the
16 other confidential source during the recorded telephone calls.
17       5.    On July 28, 2008, the CI called me, and frantically described how
18 LAWRENCE WILLIAMS wanted him/her to deliver another set of drugs soon. We
19 discussed what LAWRENCE WILLIAMS had asked of him/her for several minutes.
20 Shortly thereafter, the CI became agitated and reported that, at that very moment, he/she
21 was at home and that someone was approaching his/her pickup truck, which was parked
22 outside his/her home. The CI then said that the person was leaving.
23       6.    Moments later, LAWRENCE WILLIAMS unexpectedly called the CI and
24 told him/her that he wanted him/her to get something and deliver it to "Junior."
25 Ironically, I was still on the telephone with the CI when he/she received the call, on a

---

[1] The SCC is a Washington State program that houses sexual offenders and provides evaluations, treatment, and a therapeutic environment for such offenders. The residents of the SCC have either been civilly committed as sexually violent predators or are pending civil commitment proceedings.

1 different phone, from LAWRENCE WILLIAMS. The CI placed his/her call with
2 LAWRENCE WILLIAMS on speaker phone, so that I could hear their conversation. I
3 heard LAWRENCE WILLIAMS asking the CI whether "they" had delivered an item to
4 the CI. He/She said, "they just delivered it." The CI also explained that the package was
5 sitting outside, in his/her pickup truck. LAWRENCE WILLIAMS then told the CI,
6 "What are you waiting for? Go get it!" There was a pause in the conversation, and then
7 the CI stated that he/she had retrieved the item, that it was a kleenex that contained many
8 white rocks. LAWRENCE WILLIAMS then had a discussion with the CI about when
9 he/she would be able to deliver the rocks.

10     7.    The CI soon got off the phone with LAWRENCE WILLIAMS. I instructed
11 him/her to hold onto the package, and that an FBI agent would come to his/her house to
12 pick it up. FBI Special Agent Scott Saxon drove to the CI's home that same day and
13 received from the CI the white kleenex.

14     8.    The rocks were transported to FBI evidence, where they field-tested
15 positive for cocaine. The rocks, which were tightly wrapped in very thin plastic, weighed
16 approximately 5.4 grams with the plastic. I estimate that the plastic weighed
17 approximately .2 grams. There were approximately ten to fifteen large chunks of cocaine
18 base in the plastic.

19     9.    On July 29, 2008, the CI, at my direction, was able to convince
20 LAWRENCE WILLIAMS that he/she could not deliver the rocks to "Junior" until the
21 following day. This allowed the FBI additional time to plan for an intended "buy bust"
22 operation.

23     10.    On July 30, 2008, the CI conducted several recorded phone calls with
24 LAWRENCE WILLIAMS and "Junior" at my direction. The CI told LAWRENCE
25 WILLIAMS that he/she was ready to make the delivery. LAWRENCE WILLIAMS
26 advised him/her to work out the logistics of the delivery with "Junior." The CI called
27 "Junior," and told him that he/she could not meet with him in the morning, but that he/she
28 could meet him during the afternoon of July 30, 2008. "Junior" told the CI to meet him at

a Safeway parking lot in Puyallup, Washington, and gave the CI directions to the Safeway.

11. On July 30, 2008, the FBI conducted a "buy bust" operation with the CI. It was determined that the CI would deliver to "Junior" a cigarette box that contained sham rocks of cocaine. The CI was under constant surveillance during the operation and had been searched both prior to and after the operation. FBI agents did not find any drugs or money on the CI's person either prior to or after the operation. The FBI provided the CI with a cigarette box that contained sham rocks of cocaine.

12. At approximately 2:45 p.m., the CI drove to a Safeway parking lot in Puyallup, Washington. A man later identified as Paepaega Matautia, Jr. arrived at the parking lot. He met up with the CI, who then gave the cigarette box containing the sham drugs to Mr. Matautia. The FBI then arrested Mr. Matautia, and found on his person the cigarette box containing the sham rocks of cocaine.

13. I read Mr. Matautia his *Miranda* rights, which he stated he understood and waived. WSP Detective John McMullen and I then interviewed Mr. Matautia, who told us that LAWRENCE WILLIAMS had asked him on at least eight occasions to bring him packages of items. Mr. Matautia admitted that he knew that he was delivering drugs to LAWRENCE WILLIAMS on each occasion, and that the drugs were always in cigarette boxes. He also stated that he knew that the cigarette box that he picked up from the CI was supposed to contain drugs, and that he was planning on delivering the drugs to LAWRENCE WILLIAMS the following day, at the SCC.

14. Mr. Matautia then explained that LAWRENCE WILLIAMS typically picked up the packages from him at the SCC mail room. Mr. Matautia made a recorded telephone call with LAWRENCE WILLIAMS, who instructed Mr. Matautia to be at a the mail room at 7:00 a.m. the next day. LAWRENCE WILLIAMS told Mr. Matautia that he would pick up the item from the mail room at that time. During the early morning hours of July 31, 2008, an employee of the SCC was asked by the FBI to go to the mail room to see whether or not LAWRENCE WILLIAMS showed up. The employee went to the

1  SCC mail room, and, at 7:00 a.m., observed LAWRENCE WILLIAMS arrive, and then leave the location upon finding that Mr. Matautia was not there.

15. On July 31, 2008, LAWRENCE WILLIAMS called the CI's telephone on several occasions, and left threatening voicemail messages, including that, if he was arrested, he would "take everyone down" with him.

## CONCLUSION

16. Based on the aforementioned facts, I believe that there is probable cause to believe that LAWRENCE WILLIAMS committed the offense of conspiracy to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 963.

JEREMY BLAUSER, Complainant
Special Agent
FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe that LAWRENCE WILLIAMS committed the offenses set forth in the Complaint.

DATED this 1st day of August, 2008.

KAREN L. STROMBOM
United States Magistrate Judge

COMPLAINT/Williams– 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970